# PLAINTIFF'S EXHIBIT A

## Mr. Newman's Income Share Agreement



# INCOME SHARE AGREEMENT (TUITION ISA)

| PARTICIPANT: | ISA ORIGINATOR: | |
|---|---|---|
| Jason Newman<br>1401 Linden St<br>Indianapolis, Indiana<br>46203 | Kenzie Academy<br>47 S. Meridian St.<br>Indianapolis, IN<br>46204 | *** **THIS IS NOT** ***<br>*** **A LOAN** ***<br>*** **OR CREDIT** *** |

## APPROVAL DISCLOSURE

| Your ISA Terms | | | Your ISA Payments End (Earliest to Occur): | | |
|---|---|---|---|---|---|
| ISA Amount | Income Share | Minimum Income Threshold | Payment Term _OR_ | Payment Cap _OR_ | Payment Window |
| **$23,900.00** | **13.00%** | **$3,333.34** | **48 payments** | **$41,825.00** | **96 months** |
| The cost of the services you will receive through this ISA | The percent of your gross monthly Earned Income you will pay | You are required to make Monthly Payments only when your monthly Earned Income is at least this amount | Payments end after you have made this many Monthly Payments (excluding any costs or fees, if applicable) | Payments end when you have paid this amount (excluding any costs or fees, if applicable) | Payments end this many months after your Grace Period ends (excluding any costs or fees, if applicable) |

### FEES

**Late Fee**

The lesser of $5 and 5% of the payment amount due

**Returned Payment or Non-Sufficient Funds (NSF) Fee**

$25
($20 for NY residents)

### ITEMIZED TOTAL ISA AMOUNT

| | |
|---|---|
| **Amount paid to you** | $0.00 |
| **Amount applied to your tuition obligation:**<br>• Kenzie Academy | + $23,900.00 |
| **ISA Amount** | = $23,900.00 |

### ABOUT YOUR CONTRACT TERMS

- **Your Income Share is a fixed percentage of your future Earned Income you will owe in return for the ISA Amount** credited to your account. It is not an interest rate or annual percentage rate.

- **Your Monthly Payment will equal your monthly Earned Income multiplied by your Income Share.** As a result, Monthly Payments may vary, and the total amount you will pay may be **more or less than** your ISA Amount but will never exceed your Payment Cap.

- **Your Minimum Income Threshold is equivalent to an annual Earned Income of $40,000.**

- Your ISA obligation will end after you have paid all outstanding costs and fees, if any.

## Payment Illustration

ISAs are different from loans and tuition payment plans (which require repayment in full and may have a finance charge or interest). An ISA requires you to pay a fixed percentage of your Earned Income each month for up to a fixed number of Monthly Payments. The table below illustrates the Monthly Payment amount, number of Monthly Payments, and total amount that would be paid for various levels of Earned Income.

| Earned Income | | $23,900.00 ISA Amount 13.00% Income Share | | |
|---|---|---|---|---|
| Monthly Income | Annual Equivalent | Monthly Payment | Number of Payments | Total of Payments |
| <$3,333.34 | <$40,000 | $0 | 0 | $0 |
| $3,333.34 | $40,000 | $433 | 48 | $20,800 |
| $4,166.67 | $50,000 | $542 | 48 | $26,000 |
| $5,000.00 | $60,000 | $650 | 48 | $31,200 |
| $5,833.33 | $70,000 | $758 | 48 | $36,400 |
| $6,666.67 | $80,000 | $867 | 48 | $41,600 |

- Monthly Payments are determined based on monthly Earned Income; annual Earned Income equivalents are included for illustration purposes only.

- **This illustration assumes your Earned Income remains constant and may not apply to your specific circumstances**.

- All payments in this illustration have been rounded to the nearest dollar.



## Next Steps & Terms of Acceptance

| | |
|---|---|
| **This offer is good until:** <br> **February 12, 2020** | 1. **Questions?**  Contact Kenzie Academy's Community Manager (erika@kenzie.academy) for more information. <br> 2. **You have 30 days to accept this offer.**  The terms of this offer will not change except that we may reduce the ISA Amount if your cost of attendance has decreased or if your other financial aid has increased. <br> 3. **To accept the terms of this ISA, sign and date this ISA at the bottom of your screen.** |

## Participation Disclosure Reference Notes

> **An ISA is not a loan or other credit instrument.  It represents your obligation to make Monthly Payments linked to a specific percentage of your Earned Income and does not give us any rights regarding the direction of your educational, training, employment, or other life pursuits.**

### Eligibility Criteria
- You must be enrolled in a Kenzie Academy program.
- You must be a U.S. citizen (includes naturalized citizens), permanent resident, or DACA recipient.
- At the time of the application, you must be at least the age of majority for your state of residence.
- Your total obligations under all income-based agreements with us or another person must not require you to pay an aggregate income share in excess of twenty (20) percent of your earned income in any given month.

### Making Payments; Refunds
- You will have a 3-month Grace Period after you leave Kenzie Academy. You will not make Monthly Payments during your Grace Period.
- You will be required to make Monthly Payments based on Earned Income received **after** the Grace Period ends. Payments will be due on the 1st day of each month in connection with income received in the prior month.
- If you leave Kenzie Academy during the course of study being financed by this ISA, Kenzie Academy's refund policy provides that you may still be responsible to pay for some or all of your ISA.
- You may extinguish your obligation under this ISA at any time by paying a prepayment amount equal to $41,825.00, less any prior payments made and plus any outstanding fees.

### Circumstances When Payments Are Not Required (Deferments)
- No payments will be required in any month for which you provide appropriate documentation showing that your monthly Earned Income is less than $3,333.34 (equivalent to $40,000 per year) or that you are enrolled at least half-time in Higher Education or Training.
- Months in which no payment is due do not count toward your Payment Term.  The Payment Window will not change regardless of the number of months in which no payment is due.

### Information You Must Provide; Annual Reconciliation
- One month before the due date of your 1st payment, you must provide to us acceptable documentation of your monthly Earned Income.  If you do not provide acceptable documentation, we may estimate your Earned Income based on the average full-time income for occupations directly related to the course of study or training for which this ISA will be used (determined based on federal U.S. data).  If you subsequently provide acceptable documentation, we will use that information instead, but we will not recalculate previous statements.
- Every time your income changes, you must provide updated, acceptable documentation of your income.
- On or before April 30th during each year of your Payment Window, you must provide acceptable documentation demonstrating all of your Earned Income for the prior year and authorization to obtain your tax return information directly from the Internal Revenue Service or similar taxing authority.  We will use the information you provide to confirm your payment amounts were correct.  You must reimburse us for any underpayments, and we will credit your account for any overpayments.  If you do not provide the required information, we will assume your income has increased by 10%.

### Default
- If your payments are late by 180 days or more, we may declare your account to be in default.

> **See the Additional Terms below for further information about payment, deferment, and default. This Participation Disclosure and the Additional Terms are the legal contract that describe your and our obligations under this Income Share Agreement.**



## ADDITIONAL TERMS

THIS INCOME SHARE AGREEMENT IS NOT A LOAN OR EXTENSION OF CREDIT.  THIS AGREEMENT IS NOT AN ASSIGNMENT OF WAGES.

THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS.  YOU MAY OPT OUT OF ARBITRATION BY FOLLOWING THE PROCEDURE SET FORTH IN SECTION 20(B) BELOW.  PLEASE READ SECTION 20 CAREFULLY, AS IT AFFECTS YOUR LEGAL RIGHTS IN THE EVENT OF A DISPUTE.

YOU SHOULD SEEK ADVICE ABOUT YOUR FINANCING OPTIONS FROM A TRUSTED ADVISOR BEFORE SIGNING THIS AGREEMENT.

Read this entire document carefully and note Section 16 (about your tax liability), Section 17 (about information about you that we use and reports about you that we make to credit bureaus), and Section 21(m) (about this being an arm's-length transaction between you and us).

This Income Share Agreement ("ISA" or "Agreement") includes (i) this document, including the Participation Disclosure above and the Arbitration Agreement in Section 20(b) below (which you can reject); (ii) the Registration Form; (iii) the Final Disclosure, which will be provided to you upon execution of this Agreement to summarize the terms of the Agreement and your obligations (collectively with the Participation Disclosure referenced as the "Disclosures"); and (iv) the Consent to Electronic Communications.  In the event of any inconsistency between this document and the Final Disclosure, or between the Final Disclosure and the other Disclosures, the Final Disclosure controls.

In this Agreement, "you," "your," and "Participant" mean the person who completes and/or signs the Application and/or Registration Form and this Agreement.  "We," "our," "us," and "Kenzie" mean Kenzie Academy and any of its successors, successors-in-interest, transferees, assignees, affiliated funds, agents, designees, ISA Program Administrators, or servicers.  Our ISA Program Administrator is currently Vemo Education, Inc.

This Agreement is not a loan or extension of credit.  It represents your obligation to pay a specific percentage of your future Earned Income and does not give us any rights regarding your educational, training, employment, or other life pursuits.  The total amount you will pay under this Agreement will vary depending upon your future Earned Income and may be more or less than the amount of funds credited to your account.

This Agreement presents contract terms in a "Question and Answer" format.  By signing this Agreement, you are entering into a legally binding agreement with Kenzie on the terms of this Agreement, notwithstanding that some contract terms are presented in a "Question and Answer" format.  The Questions are headings for ease of reference only and do not qualify or limit the terms of this Agreement.



| Section | Page |
|---|---|

1.  WHAT DEFINITIONS ARE USED IN THIS AGREEMENT? ....................................................5

2.  WHEN DO YOU HAVE TO MAKE PAYMENTS UNDER YOUR ISA? ....................................6

3.  HOW MUCH WILL YOU HAVE TO PAY EACH MONTH? ...................................................6

4.  WHEN CAN WE ESTIMATE YOUR EARNED INCOME? ....................................................6

5.  WHEN ARE PAYMENTS NOT REQUIRED ("DEFERMENTS")? ..........................................7

6.  HOW ARE YOUR PAYMENTS APPLIED TO YOUR OBLIGATIONS? ....................................7

7.  WHAT ADDITIONAL FEES MIGHT YOU HAVE TO PAY? ..................................................8

8.  WHEN DO YOUR PAYMENTS END? ...........................................................................8

9.  WHAT IS THE MAXIMUM TOTAL AMOUNT THAT YOU MAY HAVE TO PAY? ....................8

10. CAN YOU PREPAY YOUR ISA? .................................................................................8

11. WHAT INFORMATION DO YOU NEED TO PROVIDE TO US AND WHEN? ...........................8

12. WHAT IS THE ANNUAL RECONCILIATION PROCESS? ....................................................10

13. WHAT INFORMATION ABOUT YOU MUST BE TRUE IN ORDER FOR YOU TO ENTER INTO THIS
    AGREEMENT? ......................................................................................................10

14. WHAT IF YOU LEAVE KENZIE ACADEMY EARLY? .........................................................11

15. WHAT IF YOU DON'T COMPLY WITH THE REQUIREMENTS OF THIS AGREEMENT? ...............11

16. WHAT ARE THE TAX IMPLICATIONS OF ENTERING INTO THIS AGREEMENT? .....................12

17. WILL WE OBTAIN A COPY OF YOUR CREDIT REPORT AND CAN WE REPORT YOUR ISA TO A CREDIT
    REPORTING AGENCY? ...........................................................................................13

18. WITH WHOM CAN WE SHARE INFORMATION WITH ABOUT YOU, YOUR PAYMENT BEHAVIOR, AND
    YOUR ISA? .........................................................................................................13

19. HOW CAN WE COMMUNICATE WITH YOU? ...............................................................13

20. WHAT IF YOU AND WE HAVE A DISPUTE ABOUT THIS AGREEMENT?  IF MANDATORY ARBITRATION IS
    IN PLACE, WHAT ARE THE TERMS?  HOW CAN YOU OPT OUT OF MANDATORY ARBITRATION? ...........14

21. WHAT OTHER INFORMATION DO YOU NEED TO KNOW? ...............................................17



1.     **What definitions are used in this Agreement?**

In addition to the definitions listed above and as otherwise called out in this Agreement, the following definitions apply to terms used in this Agreement:

(a)     "Business Day" means Monday through Friday, except for federal holidays in the United States.

(b)     "Earned Income" means your total gross wage and self-employment income.  If you are married and file your tax return jointly with your spouse, Earned Income includes, at a minimum, all income reported on a joint income tax return, *minus*, to the extent documented to our satisfaction, any income earned solely by your spouse.  Earned Income also includes other earned compensation that is not reported in a tax return, such as the total compensation that is reported in a Form W-2 or Schedule K-1.  In our discretion, we may estimate your Earned Income using documentation other than your U.S. federal income tax return, provided the documentation is another verifiable source acceptable to us.

(c)     "Higher Education or Training" means a program of study at an institution that is eligible under Title IV of the Higher Education Act, as amended from time to time, a gap year program, or a proprietary or vocational education or training program (e.g., a coding bootcamp program) that provides a more advanced degree or certification than you are receiving through this Agreement.

(d)     "Income Share" means the fixed percentage of your Earned Income that you will owe during your Payment Window in return for the ISA Amount.  It is not an interest rate or annual percentage rate.

(e)     "ISA Amount" means the amount of funds credited to your account.  The ISA Amount represents the market charge for the educational or training services you will receive from Kenzie, less any up-front payments, scholarships, or other financial assistance.

(f)     "Minimum Income Threshold" means the monthly Earned Income below which no Monthly Payment is due.

(g)     "Monthly Payment" means the amount you must pay for each month of your Payment Window in which your Earned Income is greater than or equal to the Minimum Income Threshold.  The amount of your Monthly Payment is equal to your Income Share multiplied by the amount of your monthly Earned Income.

(h)     "Payment Cap" means the maximum amount you can pay under this Agreement and is calculated as the product of 1.75x and your ISA Amount.  The Payment Cap does not include any additional fees or costs, such as late fees, non-sufficient funds ("NSF") fees, or collection costs.  See Sections 7, "What additional fees might you have to pay?" and 15(b), "Remedies Upon Default" for more information on what additional fees may be required and when.

(i)     "Payment Term" means the maximum number of Monthly Payments you will make based on your monthly Earned Income.



(j)      "Payment Window" means the maximum number of months your obligation can last.  Your Payment Window includes months during which no payments are required as a result of a deferment.

2.      **When do you have to make payments under your ISA?**

(a)      **While Enrolled at Kenzie Academy.** You are not required to make any payments while you remain enrolled at Kenzie Academy.

(b)      **Grace Period.**  You are not required to make any payments during your 3-month Grace Period.  Your Grace Period begins on the 1st day of the month following the date you cease to be enrolled at Kenzie Academy.

(c)      **Start of Your Payment Window.**  After your 3-month Grace Period ends, your Payment Window begins on the 1st day of the following month, and your 1st Monthly Payment is due on the 1st day of the month after your Payment Window begins.  For example, if your Grace Period ends in November 2020 and you earn above the Minimum Income Threshold in December 2020, then your 1st Monthly Payment will be due at the beginning of January 2021.

(d)      **Monthly Payment Dates.**   Monthly Payments are due at the beginning of each month during your Payment Window, except during months in which you provide appropriate documentation demonstrating to us that your Earned Income is less than the Minimum Income Threshold.  If you and we both agree, a different payment due date can be chosen.

3.      **How much will you have to pay each month?**

The amount of each Monthly Payment will be equal to your Income Share multiplied by the amount of your monthly Earned Income for the prior month.  We will compute your Monthly Payment using your monthly salary as described in your Initial Income Documentation, Informal Income Information, and/or Formal Income Information (as those terms are defined below in Section 11 "What information do you need to provide to us and when?").  You must provide updated information regarding the amount of your monthly Earned Income whenever it changes and on or before April 30th of each year of your Payment Window.  If such documentation demonstrates that your Earned Income has changed, we will use that information to compute an updated Monthly Payment for subsequent months.  If your Monthly Payment exceeds the remaining Prepayment Amount (as defined in Section 10, "Can you prepay your ISA?"), then you will only be required to pay the remaining Prepayment Amount.

4.      **When can we estimate your Earned Income?**

If we estimate your Earned Income, your Monthly Payments will be computed based on such estimated Earned Income, and the amount of your Monthly Payment may be lower or higher than if we had not estimated your Earned Income.  If you subsequently provide acceptable documentation of your Earned Income, we will adjust subsequent Monthly Payment amounts accordingly.  We may estimate your Earned Income in the circumstances listed below.

(a)      If you do not provide acceptable documentation to us with respect to your Earned Income at least 1 month prior to your 1st Monthly Payment due date (as described in Section 11(a), "Initial Income Information"), we may estimate your income based on the average



full-time income for occupations directly related to the course of study or training for which this ISA will be used (determined based on federal U.S. data).

(b)     If you have not provided us with your updated Earned Income by April 30th of each year of your Payment Window, we may assume your Earned Income has increased by 10% each year and adjust your Monthly Payment accordingly, beginning with the payment due June 1st of that year.

5.      **When are payments not required ("Deferments")?**

You will not have to make a payment in any month for which you submit a request to us and reasonably document to us that (a) you are earning a monthly income of less than your Minimum Income Threshold, which is $3,333.34 per month (equivalent to an annual Earned Income of $40,000) or (b) you are enrolled at least half-time (as defined by your new institution) in Higher Education or Training that provides a more advanced degree or certification than you are receiving from Kenzie Academy and you are making satisfactory academic or training progress in that program.  Months in which you do not make a payment because your Earned Income is less than the Minimum Income Threshold or because you have reenrolled are not credited as Monthly Payments and do not count toward your Payment Term.  The Payment Window will not change as a result of any applicable deferments.

6.      **How are your payments applied to your obligations?**

Payments are applied first to fees, if any, then to any past due amounts, and then to your current Monthly Payment amount.  If our ISA Program Administrator (Vemo Education, Inc., and any subsequent ISA Program Administrator) is servicing more than 1 of your ISAs, payments will be applied by our ISA Program Administrator in the order in which you signed each ISA.  If you make all Monthly Payments on time, you will not owe anything when your Payment Window ends regardless of how much you have paid.  If you pay any amounts not due (an "Overpayment"), we will hold on to your Overpayment and then reduce the amount of your next Monthly Payment(s).  If the amount of your Overpayment(s) is greater than or equal to your next Monthly Payment, then we will apply such Overpayment to that Monthly Payment, and you will not have to otherwise make such Monthly Payment.



7. **What additional fees might you have to pay?**

The following fees apply, subject to applicable law:

| Description | Amount |
|---|---|
| **Late Payment Fee**<br>A fee charged if you do not make any payment due under this ISA on or before the 10th day after the due date.  Any payment received after 6:00 PM Eastern time on a Business Day is deemed received on the next Business Day.  Payments due on a non-Business Day will be considered to be due on the next Business Day. | The lesser of $5 and 5% of the payment amount due |
| **Returned Payment (NSF) Fee**<br>A fee charged if any payment is returned or fails due to insufficient funds in your account or for any other reason. | $25 ($20 for NY residents) |
| **Service Fees**<br>You may be required to pay for certain optional value-added services you request, such as overnight mail, expedited payments, faxes, etc.  The amount of each Service Fee will be clearly disclosed to you beforehand. | Varies |

8. **When do your payments end?**

Your payment obligation ends on the date on which the **first** of any of the following occurs: (i) the number of Monthly Payments you have made equals the Payment Term; or (ii) you have cumulatively paid the Payment Cap (plus any additional fees or costs, such as late fees, NSF fees, or collection costs); or (iii) the end of the Payment Window has been reached.  The end of your Payment Window does not extinguish your obligation to make up any missed payments.

9. **What is the maximum total amount that you may have to pay?**

You will never have to pay more than the Payment Cap (excluding any additional costs and fees incurred).

10. **Can you prepay your ISA?**

You can prepay your ISA at any time by paying to us an amount (the "**Prepayment Amount**") equal to (i) the Payment Cap, (ii) less all previous Monthly Payments, (iii) plus any outstanding fees.  Because no interest accrues on this ISA, prepaying will not reduce the overall amount you will be required to pay.  Prepaying your ISA will waive your right to a refund of any amounts previously paid that might otherwise be refunded to you pursuant to the Annual Reconciliation process described below (e.g., if your Earned Income decreases after you pay the Prepayment Amount).

11. **What information do you need to provide to us and when?**

(a)     **Initial Income Information.**  Not later than 1 month before your 1st scheduled Monthly Payment is due, you agree to provide us with 1 of the following kinds of documentation, which must be less than 30 days old as of the date you provide it:



(i)     a copy of any pay stub or letter from your employer containing your salary information, a self–employment contract, a consulting agreement, a good faith estimate of your self–employment income for the current calendar year (along with documentation of the basis for your estimate), or another verifiable source acceptable to us (collectively, "**Informal Earned Income Documentation**") for each source of Earned Income;

(ii)    documentation acceptable to us demonstrating that your Earned Income is less than the Minimum Income Threshold; or

(iii)   documentation acceptable to us demonstrating that you are enrolled at least half-time in Higher Education or Training.

(b)     **Reconciliation Information.**  On or before April 30th of each year of your Payment Window, and on or before April 30th following the end of your Payment Window, you agree to provide us with:

(i)     a completed and signed IRS Form 4506-T or Form 4506T-EZ (or any successor form), designating us as the recipient of your tax return information for returns covering any and all months of your Payment Window, which must be less than 30 days old as of the date you provide them to us;

(ii)    one of the following to verify your Earned Income or deferment status for the preceding year:

(1)    a year-end pay stub, Form W-2, Form 1099, Schedule K-1, or other verifiable source acceptable to us (collectively, "**Formal Earned Income Documentation**") for each source of Earned Income in the prior calendar year, or

(2)    if your ISA is in a deferment status, updated documentation to reverify your eligibility for a deferment; and

(iii)   Informal Earned Income Documentation for each source of Earned Income that you expect to have in the coming year.

(c)     **Deferment Information.**

(i)     You must notify us as soon as possible if you experience a decrease in your monthly income to an amount equal to or less than $3,333.34 or if you enroll at least half-time in Higher Education or Training, and you must provide supporting documentation acceptable to us of such updated information.

(ii)    If your account is in a deferment status, you must notify us as soon as possible when you are no longer eligible for that deferment and provide us with relevant Formal or Informal Earned Income Documentation so that we can compute an updated Monthly Payment amount.

(d)     **Notice of Certain Changes.**  You agree to notify us within 30 days of any change in your:



(i)     primary residence address, phone number or email, or any other material change to information you previously provided to us;

(ii)    employment status, including both terminations of employment and new employment;

(iii)   Earned Income measured on a monthly basis;

(iv)    marital status, to the extent reasonably required for us to exclude earnings of your spouse from the calculation of your Earned Income; and

(e)     enrollment status in Higher Education or Training.

12.    **What is the Annual Reconciliation process?**

Annual Reconciliation is the process by which we verify that you have been paying the proper amounts owed to us.  If you have underpaid, we will make appropriate adjustments to future Monthly Payment amounts.  If you have overpaid, we will credit your account for any such excess amounts.

(a)    **Reconciliation Information.**  In order to conduct Annual Reconciliation, you must provide the information described in Section 11(b) ("What information do you need to provide to us and when?") regarding the total income you earned in the prior calendar year.

(b)    **Prior Year Reconciliation.**  Each year, we will review your Reconciliation Information and determine if you underpaid or overpaid in the prior year.  If you underpaid, we will notify you of the amount of your underpayment, and you agree to pay such amount by the deadline stated in our notification to you.  If you overpaid, we will apply Overpayments first to unpaid fees and second as a credit toward future payments due.  If you overpaid in the final year of your Payment Window, we will refund the excess amounts.

13.    **What information about you must be true in order for you to enter into this Agreement?**

(a)    By entering into this Agreement, you represent that:

(i)     all information provided in connection with your Application and/or Registration Form is true and accurate and you have not provided any false, misleading or deceptive statements or omissions of fact;

(ii)    you have never been convicted of a felony or of any crime involving dishonesty or breach of trust under any federal or state statute, rule or regulation;

(iii)   you are not contemplating bankruptcy and you have not consulted with an attorney regarding bankruptcy in the past 6 months;

(iv)    you are at least the age of majority based on your current state of residence;

(v)     you are a U.S. citizen (includes naturalized citizens), permanent resident, or DACA recipient;



(vi)     you have filed all federal tax returns and reports as required by law, they are true and correct in all material respects, and you have paid all federal taxes and other assessments due; and

(vii)    you have not entered into private income-based agreements with us or another party that, together with this ISA, will obligate you to pay a total share of your income exceeding 20.00% of your Earned Income in any given month.

Loans with income-driven repayment plans, including federal student loans, will not be considered private income-based agreements under this Section.

(b)    **Additional Tax Filing Requirements.**

(i)     **Tax returns; extensions.**  For each tax year during your Payment Window—including the tax year during which your Payment Window ends—you agree either (a) to file your U.S. federal income tax returns by no later than the date on which they are due or (b) to notify us as of any extension you seek for filing federal income tax returns.  Moreover, if we request, you agree to complete, sign, and provide to us IRS Form 4506-T or Form 4506T-EZ (or any successor form), designating us as the recipient of your tax return information for returns covering any and all years of your Payment Window, within 30 days of our request.  You agree to perform any similar requirements or procedures for any other applicable country's taxing authority.

(ii)    **Joint tax filing information.**  If you are married or get married and file your taxes jointly with your spouse, you agree to provide evidence of your individual Earned Income so that we can exclude your spouse's income from the calculation of your Monthly Payment.

## 14.   **What if you leave Kenzie Academy early?**

If you leave Kenzie Academy early or are otherwise entitled to a refund under our applicable refund policy, then you may be entitled to a reduction of your ISA Amount, Income Share, or other ISA terms.  We will notify you as provided in Section 19 of any changes to your ISA Amount or other terms.

## 15.   **What if you don't comply with the requirements of this Agreement?**

(a)    **Default.**  Without prejudice to our other rights and remedies hereunder, and subject to applicable law, we may deem you to be in default under this Agreement upon: (i) your failure to make any payment in full and on time for 180 consecutive days; (ii) your failure to provide any information under this Agreement when required, including, without limitation, your failure to provide us a completed and signed IRS Form 4506-T or Form 4506T-EZ (or any successor form) within 30 days after the April 30th annual deadline or our separate request; or (iii) your violation of any other provision of this Agreement that impairs our rights, including if you have provided information to us that is materially false, misleading, or deceptive in connection with this ISA.

(b)    **Remedies upon default.**  Subject to applicable law (including any notice and/or cure rights provided by applicable law), upon default, we may elect to (i) collect the Prepayment Amount, (ii) enforce all legal rights and remedies in the collection of such amount and related fees, or (iii) utilize any combination of these remedies.  You agree to



pay our court costs, reasonable attorneys' fees, and other collection costs related to the default (including our fees and costs due to your bankruptcy or insolvency, if applicable) to the extent permitted by applicable law.

(c)  **Equitable remedies.**  If we conclude that money damages are not a sufficient remedy for any particular breach of this Agreement, then we will be entitled to seek injunctive or other equitable relief as a remedy for any such breach to the fullest extent permitted by applicable law.  Such remedy shall be in addition to all other remedies available at law or equity to us.

16.  **What are the tax implications of entering into this Agreement?**

(a)  You acknowledge and agree that the federal, state, and local income tax consequences of this Agreement are not certain and that we have not provided you with any tax advice or assurance of specific consequences.

(b)  Notwithstanding the foregoing, recognizing that all parties are best served by consistent, good faith tax reporting of the transaction in accordance with what the parties believe to be its economic substance, except as otherwise required by law, you agree to report the transaction for federal, state, and local income tax purposes as a financial contract (in other words, as the "sale" by you of part of the income stream you will earn in the future) and not as a loan or any other form of indebtedness.  Whether the financial contract results in a gain or loss will be unknown until the end of your Payment Window or until this Agreement is terminated, if prior to the end of your Payment Window.  Under applicable tax law, we understand that when the parties to a transaction do not know the extent of the gain or loss from such transaction when it occurs, they can treat the transaction as an "open transaction" and determine the consequences once the final terms are known.  Under this tax treatment, it is expected that you will not recognize the ISA Amount as income when you enter into this Agreement.  **Upon the maturity or termination of this Agreement, if the aggregate amount of funding credited to your account is greater than the aggregate sum of Monthly Payments you made to us during your Payment Window, then you will likely recognize the difference as ordinary income equal to the difference between the amount of funding credited to your account and the sum of Monthly Payments you made to us.**  You agree to file your federal, state, and local income tax returns in accordance with this expected tax treatment unless you notify us in writing at least 30 days before filing any such return (as provided in Section 19) that you intend to take a contrary position.

(c)  You acknowledge that because the appropriate tax reporting is uncertain, the IRS and/or state or local taxing authorities may challenge the method of reporting described above, and new legislation may affect the federal, state, or local tax treatment of this Agreement. If such a challenge were to succeed, you could have significantly greater tax liability at a significantly earlier time or times than would be the case under the method described above.  While we are under no obligation to do so, it also is possible that we may seek a ruling from the IRS during your Payment Window regarding these tax consequences. **You agree and acknowledge that you have had an opportunity to consult with your own trusted advisor about the tax consequences of entering into this ISA and receiving the ISA Amount.**



17.   **Will we obtain a copy of your credit report and can we report your ISA to a credit reporting agency?**

You authorize us to obtain your credit report, verify the information that you provide to us, and gather additional information that may help us assess and understand your performance under this Agreement.  You understand that we may verify your information and obtain additional information using a number of sources, including but not limited to consumer reporting agencies, other third-party databases, past and present employers, other school registrars, public sources, and personal references provided by you.  If you ask, you will be informed whether we obtained a credit report and, if so, the name and address of the consumer reporting agency that furnished the report.  You also understand and agree that we may obtain a credit report and gather additional information, including from the sources described above, in connection with the review or collection of amounts owed under your ISA.  You consent to our sharing of your information with our affiliates and financing parties, which we will do using reasonable data security procedures.

**Although this Agreement is not a loan or other credit instrument, we may inform credit bureaus about your positive payment behavior when you make Monthly Payments as agreed.  However, this also means that late payments, missed payments, or other defaults under this Agreement may be reflected in your credit report.**

18.   **With whom can we share information with about you, your payment behavior, and your ISA?**

You agree that we may share information about you, your payment behavior, and your ISA with (a) our agents and service providers; (b) other schools you may attend, but only to the extent necessary to enforce this ISA (for example, to ensure that you qualify for any in-school deferment periods or that you do not exceed your maximum ISA commitment as specified in Section 13(a)(vi)); (c) investors in your ISA; (d) anyone to whom you authorize us to disclose information about this ISA; and (e) anyone else as permitted by law.  If we sell or assign some or all of our rights under this ISA, you authorize such assignee or purchaser of your ISA to share with us information about you, your payment behavior, and your ISA.

19.   **How can we communicate with you?**

(a)   **Electronic Communications.**  We may decide to deliver any documents or notices related to this Agreement by electronic means.  Except as otherwise provided in the Consent to Electronic Communications, you agree to receive such documents or notices by electronic delivery and to participate through an online or electronic system established and maintained by us or a third party designated by us.

(b)   **Automatic Reminders.**  We may use automated telephone dialing, text messaging systems, and electronic mail to provide messages to you about payment due dates, missed payments, and other important information.  The telephone messages may be played by a machine automatically when the telephone is answered, whether answered by you or someone else.  These messages may also be recorded in your voicemail.  You give us your permission to call or send text messages to any telephone number you provide us now or in the future and to play pre–recorded messages or send text messages with information about this Agreement over the phone.  You also give us permission to communicate such information to you via electronic mail.  You agree that we will not be liable to you for any such calls or electronic communications, even if information is



communicated to an unintended recipient.  You understand that, when you receive such calls or electronic communications, you may incur a charge from the company that provides you with telecommunications, wireless, and/or Internet services.  You agree that we have no liability for such charges.  You agree that this authorization constitutes a bargained-for exchange.  To the extent you have the right under applicable law to revoke this authorization, you agree you may do so only by updating your preferences through your online servicing account or by contacting us at answers@vemo.com.

(c)    **Telephone Recording.**  You understand and agree that we may monitor and/or record any of your phone conversations with us.

20.    **What if you and we have a dispute about this Agreement?  If mandatory arbitration is in place, what are the terms?  How can you opt out of mandatory arbitration?**

> Unless you opt out as described in Section 20(c) below, this ISA will automatically be subject to arbitration in accordance with the provisions of Section 20(b) (the "Arbitration Agreement").

(a)    **Notice and Cure.**  Prior to initiating a lawsuit or arbitration regarding a Claim (as defined in this Section 20(b) below), the party asserting the Claim (the "**Complaining Party**") shall give the other party (the "**Defending Party**") written notice of the Claim (a "**Claim Notice**") and a reasonable opportunity, not less than 30 days, to resolve the Claim.  If we are the Complaining Party, we will send the Claim Notice to you at your e-mail and/or physical mail address appearing in our records or, if you are known to be represented by an attorney, to your attorney at his or her office address.  Any Claim Notice must explain the nature of the Claim and the relief that is demanded.  The Complaining Party must reasonably cooperate in providing any information about the Claim that the Defending Party reasonably requests.

(b)    **Arbitration Agreement.**  Except as expressly provided in this Section 20(c) below, you and Kenzie agree that any past, present, or future claim, dispute, or controversy, regardless of the legal theory on which it is based, arising out of, relating to or in connection with this Agreement, or that arises from or is related to any relationship resulting from this Agreement (a "**Claim**"), may be submitted to and resolved on an individual basis by binding arbitration under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "**FAA**"), before the American Arbitration Association (the "**AAA**") under its Consumer Arbitration Rules (the "**AAA Rules**"), in effect at the time the arbitration is brought, unless Kenzie and you agree in writing to arbitrate before a different party.  If the AAA is unable to serve as administrator—and Kenzie and you cannot agree on a replacement—a court with jurisdiction will select the administrator or arbitrator.  The AAA Rules are available online at http://www.adr.org.  If a Claim is arbitrated, it will be resolved by a neutral third-party arbitrator, and not by a judge or a jury, and you and Kenzie knowingly and voluntarily waive the right to a jury trial on such Claim.

The party bringing the Claim may elect arbitration of the Claim by initiating an arbitration in accordance with the Administrator's rules. The other party may elect arbitration by giving written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the administrator then in effect. It will be up to the party bringing the Claim to commence the arbitration proceeding. Even if all parties have opted to litigate a Claim in court, Kenzie or you may elect arbitration with respect to any Claim made by a new party or any Claim later asserted by a party in that or any related or unrelated lawsuit



(including a Claim initially asserted on an individual basis but modified to be asserted on a class, representative, or multi–party basis). Nothing in that litigation shall constitute a waiver of any rights under this Arbitration Agreement. The arbitrator will be selected under the Administrator's rules, except that the arbitrator must be a lawyer with at least 10 years of experience or a retired judge, unless you and we agree otherwise.

"Claim" has the broadest possible meaning and includes initial claims, counterclaims, cross-claims, and third-party claims.  It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law, and equity (including any claim for injunctive or declaratory relief).  For purposes of this Arbitration Agreement the term "Kenzie" includes (a) Kenzie Academy; (b) any successor, successor-in-interest, transferee, assignee, affiliated fund, agent, designee, ISA Program Administrator, or servicer of Kenzie; (c) any affiliates, subsidiaries, and/or parent of the persons and entities referenced in (a) or (b); (d) the officers, directors, employees, stockholders, members, affiliates, subsidiaries, and parents of all of the foregoing in (a) through (c); and (e) any party named as a co–defendant with Kenzie in a Claim asserted by you, such as ISA Program Administrators, servicers, and debt collectors.  Notwithstanding the above, if a Claim that you or Kenzie wishes to assert against the other is cognizable in a small claims court (or your state's equivalent court) having jurisdiction over the Claim and the parties, you or Kenzie may pursue such Claim in that small claims court; however, if the Claim is transferred, removed, or appealed to a different court, it shall be resolved by arbitration.  Nothing in that small claims court lawsuit shall constitute a waiver of any party's rights under this Arbitration Agreement with respect to Claims asserted in any related or unrelated lawsuits.  Moreover, any dispute concerning the validity or enforceability of this Arbitration Agreement or any part thereof (including, without limitation, the class action waiver below) must be decided by a court; any dispute concerning the validity or enforceability of the Agreement as a whole is for the arbitrator.

Any arbitration hearing that you attend will take place in a location that is reasonably convenient for you.  If you cannot obtain a waiver of the AAA's or arbitrator's filing, administrative, hearing, and/or other fees, we will consider in good faith any request by you for us to bear such fees.  Each party will bear the expense of its own attorneys, experts, and witnesses, regardless of which party prevails, unless applicable law or this Agreement gives a right to recover any of those fees from the other party.  The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation, and privilege rules that would apply in a court proceeding, and shall be authorized to award all remedies available in an individual lawsuit under applicable substantive law, including, without limitation, compensatory, statutory, and punitive damages (which shall be governed by the constitutional standards applicable in judicial proceedings), declaratory, injunctive, and other equitable relief, and attorneys' fees and costs.  Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award.  The arbitrator's award will be final and binding, except for any appeal right under the FAA.  Any court with jurisdiction may enter judgment upon the arbitrator's award.  No arbitration award involving the parties will have any preclusive effect as to issues or claims in any dispute involving anyone who is not a party to the arbitration, nor will an arbitration award in prior disputes involving other parties have preclusive effect in an arbitration between the parties to this Arbitration Agreement.

This Arbitration Agreement shall survive the termination of this ISA, your fulfillment or default of your obligations under this ISA, and/or your or our bankruptcy or insolvency (to



the extent permitted by applicable law).  In the event of any conflict or inconsistency between this Arbitration Agreement and the administrator's rules or other provisions of this ISA, this Arbitration Agreement will govern.

**CLASS ACTION WAIVER:  IF A CLAIM IS ARBITRATED, NEITHER YOU NOR KENZIE WILL HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION, OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER.**  Further, unless both you and Kenzie agree otherwise in writing, the arbitrator may not join or consolidate Claims with claims of any other persons.  The arbitrator shall have no authority to conduct any class, private attorney general, or other representative proceeding, and shall award declaratory or injunctive relief only in favor of the party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.  The arbitrator shall have no authority to issue any relief that applies to any person or entity except you or Kenzie individually.

If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply, except that (a) if a determination is made in a proceeding involving Kenzie and you that the class action waiver is invalid or unenforceable with respect to a claim that does not seek public injunctive relief, only this sentence of this Arbitration Agreement will remain in force and the remainder of this Arbitration Agreement shall be null and void, provided that the determination concerning the class action waiver shall be subject to appeal, and (b) if a Claim is brought seeking public injunctive relief and a court determines that the restrictions in the class action waiver prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such Claim (and that determination becomes final after all appeals have been exhausted), the Claim for public injunctive relief will be determined in court and any individual Claims seeking monetary relief will be arbitrated.  In such a case the parties will request that the court stay the Claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court.  In no event will a Claim for public injunctive relief be arbitrated.

(c)     **RIGHT TO REJECT:**  You may reject this Arbitration Agreement by mailing a signed rejection notice to Kenzie Academy, c/o Vemo Education, 3905 Tampa Rd #2453, Oldsmar, FL, 34677, or by faxing it to (813) 438-7862 within 30 calendar days after the date of this Agreement.  Any rejection notice must include your name, address, e-mail address, telephone number, and account or contract number.  If you reject this Arbitration Agreement, that will not affect any other provision of the Agreement.

(d)     **Waiver of Jury Trial.**  YOU ACKNOWLEDGE AND AGREE THAT, INASMUCH AS THE PURPOSE OF THE ARBITRATION AGREEMENT IN SECTION 20(B) IS TO REQUIRE THAT ALL CLAIMS BE RESOLVED BY BINDING ARBITRATION, NO PARTY TO THIS AGREEMENT SHALL BE ENTITLED TO A TRIAL BY JURY IF SUCH ARBITRATION AGREEMENT IS IN EFFECT.  MOREOVER, TO THE EXTENT YOU TIMELY AND ADEQUATELY REJECT THE ARBITRATION AGREEMENT IN SECTION 20(B), OR IF FOR ANY OTHER REASON A CLAIM IS NOT ARBITRATED, KENZIE AND YOU KNOWINGLY AND VOLUNTARILY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM.



21.     **What other information do you need to know?**

(a)     **ISA proceeds; Setoff.**  We will credit the ISA Amount set forth in your Final Disclosure against your financial obligations to us and send you an account confirmation notice that itemizes the allocated amounts.  You understand that we may apply the ISA Amount toward any preexisting financial obligations you owe to us, in which case this ISA may not be sufficient to meet your entire tuition obligation to us, and a balance may remain due. The funds disbursed to Kenzie Academy on your behalf are considered to be a "private source of aid" under the refund policy.  If you are entitled to a refund and a portion of the refund is applied to this ISA, you will be provided with notice of any changes to your ISA Amount, Income Share, Payment Term, and Payment Cap.  If refund amounts available from Kenzie Academy are sufficient to cover the entire ISA Amount, this ISA will be terminated.

(b)     **Your ISA Contract Terms.**  The Participation Disclosure above sets forth your ISA Amount, Income Share, Payment Term, Payment Cap, and Payment Window, which terms will also be reflected in your Final Disclosure.  In the event that these terms are adjusted during a review or certification process, you will be provided with a new or amended Final Disclosure.  Your Final Disclosure and any new or amended Final Disclosure(s) will also inform you of your right-to-cancel period and instructions for exercising your right to cancel this Agreement in its entirety.  In the event of any inconsistency between this ISA and the Disclosures, or between the Disclosures, the last Final Disclosure controls.

(c)     **Waiver of ISA Due to Death or Total and Permanent Disability.**  We will waive the remainder of what you owe under this Agreement, including any past due amounts and fees, if you die or become totally and permanently disabled.  Notwithstanding any waiver of your ISA Amount under this Section, you or your estate must provide us with any tuition refund you may receive from us, which we will apply to your ISA to reduce the amount being waived hereunder.  If you would like to assert a waiver based on total and permanent disability, you will need to submit an application accompanied by a physician's statement and such other information or documentation we may require, showing that you are unable to work in any occupation due to a condition that began or deteriorated after the date of the Final Disclosure and that the disability is expected to be permanent. Unless your Monthly Payments already are deferred under Section 5, you must continue to make Monthly Payments until the time the disability application is completed to our satisfaction.  If we approve your disability waiver application, the waiver will be effective as of the date of the completed application.

(d)     **Correction of Errors.**  All parties to this Agreement agree to fully cooperate and adjust all typographical, computer, calculation, or clerical errors discovered in any or all of the ISA documents including this document, your Application and/or Registration, the Participation Disclosure, the Final Disclosure, and any Notice to Married Residents of Arizona or Wisconsin, as applicable. Errors in the names and/or addresses of the parties will be corrected by notice to all parties.  In the event this procedure is used for any other errors, all parties involved will be notified and will receive a corrected copy of the changed document.

(e)     **Amendments and Waivers.**  We may amend this Agreement as necessary to comply with changes in applicable law without providing you with advance notice.  We will provide you with at least thirty (30) days' advance notice of any other amendments, which must be signed by both parties in order to be effective.  No delay or failure to require



performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

(f)     **Customer Identification Policy.**  To help the government fight the funding of terrorism and money laundering activities, we will obtain, verify, and record information that identifies each person who enters into this Agreement.  What this means for you:  When you enter into this Agreement, we reserve the right to ask for your name, address, date of birth, and other information that will allow us to identify you.  We may also ask to see your driver's license or other identifying documents, or for you to provide true and correct copies to us.

(g)     **Governing Law.**  The validity, interpretation, construction, and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto and thereto shall be governed, construed, and interpreted in accordance with the laws of the State of Indiana, without giving effect to principles of conflicts of law.  Notwithstanding the foregoing, federal law shall govern the Arbitration Agreement in Section 20(b).

(h)     **Entire Agreement.**  This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings, and agreements, whether oral or written, between you and us relating to the subject matter hereof.

(i)     **Successors and Assigns.**  Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators, and legal representatives.  We may sell, assign, or otherwise transfer any of our rights, economic benefits, or obligations under this Agreement.  You may not assign, whether voluntarily or by operation of law, any of your rights, economic benefits or obligations under this Agreement, except with our prior written consent.

(j)     **Notices.**  Any notice, demand, or request required or permitted to be given under this Agreement shall be in writing and, except as otherwise provided, shall be deemed sufficient when sent by e-mail or 2 Business Days after being deposited in the U.S. mail as certified or registered mail with postage prepaid.  Notices to Kenzie shall be sent to answers@vemo.com or to Kenzie Academy, c/o Vemo Education, 3905 Tampa Rd #2453, Oldsmar, FL, 34677, or as subsequently modified by written notice.  Notices to you will be sent to the e-mail and/or physical mail addresses you provided in your Application and/or Registration Form, or as subsequently modified by written notice to us.

(k)     **Severability.**  Except as set forth in the Arbitration Agreement, if 1 or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith.  In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded, and (iii) the balance of the Agreement shall be enforceable in accordance with its terms.

(l)     **Execution; Electronic Transactions.**  This Agreement may be executed electronically or manually.  Execution may be completed in counterparts (including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically), which together constitute a single agreement.  Any copy of this Agreement



(including a copy printed from an image of this Agreement that has been stored electronically) shall have the same legal effect as an original.

(m)     **Independent Decision to Enter into this ISA.**  You agree that this Agreement is an arm's length transaction.  You agree that we are not an agent or fiduciary or advisor in your favor in connection with the execution of this Agreement.  You agree that we have not provided any legal, accounting, investment, regulatory, or tax advice with respect to this Agreement.

(n)     **Marital Property.**  If you are married and live in Wisconsin on the date you sign this Agreement or during the term hereof, your signature on this ISA confirms that any financial obligation incurred as a result of this ISA is being incurred in the interest of your marriage or family.   If you are married and live in Texas on the date you sign this Agreement or during the term hereof, you agree to hold your Earned Income in a separate bank account from your spouse.

[Signature Page Follows]



The parties, intending to be legally bound, have executed this Agreement as of the date set forth below.

**NOTICE**
1. **Do not sign this ISA before you read it or if it contains any blank terms.**
2. **You are entitled to a completely filled-in copy of this ISA.**
3. **You have the right to pay off this Agreement in advance by paying the Prepayment Amount in accordance with Section 10.**

**By signing below, you acknowledge that you have read this entire Agreement carefully and agree to its terms, including Section 16 (about your tax liability), Section 17 (about information about you that we use and reports about you that we may make to credit bureaus), Section 21(m) (about this being an arm's length transaction between you and us), and Section 20 (about arbitration on an individual basis and class-action waiver, including your opt-out right).**

KENZIE ACADEMY:

By: _____
     *(Signature)*

Date: Jan 13, 2020

Name: Chok Ooi

Title: Co-Founder & CEO

Address: Kenzie Academy
         47 S. Meridian St.
         Indianapolis, IN
         46204

YOU:

By: _____
     Jason Newman (Jan 13, 2020)
     *(Signature)*

Date: Jan 13, 2020

Name: Jason Newman

Address: 1401 Linden St
         Indianapolis, Indiana
         46203

Phone: 3173669902

# PLAINTIFF'S EXHIBIT B

## Mr. Newman's Letters to Kenzie & Launch

Jason Newman
23449 Hughes Ave
Hazel Park, MI
48030
1/31/2023


Launch Servicing LLC
2300 E. 54th St. North
Sioux Falls, SD 57104
Re: Account #618112000


Dear Launch Servicing LLC,

I am writing to inform you that I am making payments on the referenced account under duress. You do not have the right to collect any money from me, but I have deemed it necessary to make payments in order to protect my credit score.

I have previously stated this in my complaints to the Indiana Attorney General and Consumer Financial Protection Bureau, but will say here again that the contract you are attempting to collect on came from a provider that had no legal right to issue the education loan in the first place. By servicing this void and unenforceable contract, you are also now subject to legal liability under federal and Indiana state law.

Under Indiana law, I have the right to recover all monies paid on this account, which I am now formally requesting with this letter. Refund any and all monies paid toward this account, officially close it out, provide me with confirmation that the alleged debt has been vacated/deleted, and cease any attempts to contact me regarding this account in the future.

If you refuse my requested refund, I will be pursuing the full amount of damages I am entitled to under Indiana law.

Thank you for your cooperation.

Sincerely,


Jason Newman


_____

Jason Newman
23449 Hughes Ave
Hazel Park, MI
48030
1/31/2023


Kenzie Academy
47 S. Meridian St.
Indianapolis, IN 46204
Re: Account #618112000


Attn: Kenzie Academy/Melissa Paciulli

I have filed complaints with the Indiana Attorney General and the Consumer Financial Protection Bureau against Kenzie Academy and Launch Servicing LLC requesting that a formal investigation be opened into Kenzie's use of income share agreements. However, the purpose of this letter is to inform you that I am making payments on the referenced account under duress. You do not have the right to employ Launch Servicing LLC to collect any money from me, but I have deemed it necessary to make payments in order to protect my credit score.

The private education loan you call an income share agreement violates numerous state and federal laws, and this financial product is void and unenforceable according to Indiana statutes. Any future attempts to employ Launch Servicing LLC to collect monies from me will only serve to increase your already significant legal jeopardy regarding this matter.

Additionally, under Indiana law, I have the right to recover all monies paid on this account, which I am now formally requesting with this letter. I have done the same with Launch Servicing. Either you or Launch must refund any and all monies paid toward this account, officially close it out, provide me with official confirmation of its closure, and cease any attempts to contact me regarding this account in the future.

If you refuse my requested refund, I will be pursuing the full amount of damages I am entitled to under Indiana law.

Thank you for your cooperation.

Sincerely,

Jason Newman


_____

# PLAINTIFF'S EXHIBIT C

**Kenzie's Response Letter to Mr. Newman**



**Jason Newman**  4:00 PM
"Dear Jason,

We received your complaint letter dated 1/31/2023 regarding your payment obligation and servicing of your Income Share Agreement (ISA). We have reviewed your complaint pursuant to Kenzie Academy's dispute procedures. Thank you for bringing your concerns to our attention. I appreciate you allowing Kenzie Academy at Southern New Hampshire University time to research your complaint.

In your complaint, you alleged that the Income Share Agreement contract dated January 30, 2020, was unenforceable. You also requested complete relief from your ISA and a full refund of the amounts paid so far. In reviewing your complaint, we reviewed the executed contract, the record of your communications and the services you received from Kenzie and other related documentation. We determined that the ISA you signed constitutes a valid and enforceable contract for which you received the full benefit of 12 months of educational services from Kenzie. Therefore, upon review of your letter directed to Melissa Paciulli, your desired outcome of paying 0% of the original ISA and receiving a refund for the amount already paid has been denied.

If you have questions about your ISA, Kenzie Academy encourages you to work with Launch directly by contacting them at 877-354-2629 to discuss payment options and report income.

We understand this may not be your desired outcome in the complaint process. We thank you for raising your concern and for your patience while we reviewed your file.

 Sincerely,

Erika Huber
Director of Regulatory and Compliance"